**SO ORDERED.**

**SIGNED this 08 day of September, 2008.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| NATALIE MARIE CESPEDES | 07-02420-5-ATS |
| DEBTOR | |

### ORDER ALLOWING OBJECTION TO CLAIM

The matter before the court is the objection filed by the chapter 13 debtor, Natalie Marie Cespedes, to the claim (Claim No. 1) filed by the Internal Revenue Service. A hearing took place in Raleigh, North Carolina on August 19, 2008.

The primary issue before the court is whether the 10% early withdrawal liability incurred by a debtor pursuant to 26 U.S.C. § 72(t) when, prior to bankruptcy, the debtor makes an early withdrawal from an Individual Retirement Account ("IRA") is an excise tax entitled to priority pursuant to 11 U.S.C. § 507(a)(8)(E), or is a penalty to be treated as a general unsecured claim. If the 10% early withdrawal liability is a priority claim, the debtor's plan, pursuant to § 1325(a)(1) and § 1322(a)(2), may not be confirmed unless the claim is paid in full. If the 10% early withdrawal liability is a general unsecured claim, it can be paid pro rata through a plan along with other general unsecured claims.

Natalie Marie Cespedes filed a petition for relief under chapter 13 of the Bankruptcy Code on October 26, 2007, and has proposed a plan that provides for monthly payments of $230 for 55 months, but does not pay a dividend to unsecured creditors. The IRS filed a proof of claim, Claim No. 1, in the total amount of $6,599.03. The claim consists of two components: an unsecured claim of $265.64 and a priority claim of $6,333.39. Ms. Cespedes does not dispute the aggregate amount of the claims, but she contends that the priority claim is overstated by $5,850, and should instead be $483.39, while the unsecured claim should be $6,114.64.

In 2006, prior to filing her chapter 13 bankruptcy petition, Ms. Cespedes withdrew $58,496 from two IRA accounts. She reported the withdrawals on her 2006 tax return, and her gross income (and adjusted gross income) for that year, including the IRA withdrawals and her wages, was $75,542. Her 2006 income tax, including the 10% early IRA withdrawal liability in the amount of $5,850, was $9,974. This amount was reduced by $1,154, the amount of taxes withheld from her wages, a $51.23 refundable credit for telephone taxes, and a $2,699.06 offset from a refund due to Ms. Cespedes for her 2005 taxes. After deducting those amounts and adding accrued interest of $263, the debtor owes $6,333.39 for her 2006 income taxes.

The IRS contends that the $5,850 early IRA withdrawal liability is an excise tax and is a priority claim pursuant to § 507(a)(8)(E).[1] The debtor argues that the liability is a penalty and is a

---

[1] Section 507(a)(8)(E) provides priority treatment for
(E) an excise tax on –
   (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
   (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition[.]

2

general unsecured claim. The IRS contends that if the liability is a penalty, it is a penalty "in compensation for actual pecuniary loss," and so is entitled to priority under § 507(a)(8)(G). The term excise tax is not defined, but clearly the term excise tax does not include a penalty.

The 10% early IRA withdrawal liability is imposed by 26 U.S.C. § 72(t), which provides

> If any taxpayer receives an amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is included in gross income.

There are exceptions that permit early withdrawal without an early withdrawal liability, but none of those exceptions are applicable in this case.

The first case to squarely address whether the early IRA withdrawal liability is a priority claim or a general unsecured claim was United States v. Dumler (In re Cassidy), 983 F.2d 161 (10th Cir. 1992). In that chapter 11 case, the plan disbursing agent objected to the IRS's priority claim, which was based on an early IRA withdrawal assessment. The IRS contended that because Congress labeled the § 72(t) liability as a tax and because Congress granted taxes priority in the Bankruptcy Code, the court had no authority to look beyond those designations. The court, relying on New Jersey v. Anderson, 203 U.S. 483, 27 S. Ct. 137 (1906) and New York v. Feiring, 313 U.S. 283, 61 S. Ct. 1028 (1941), rejected the contention that the court could not "recharacterize for purposes of bankruptcy what Congress has deemed a tax in the Internal Revenue Code." Cassidy, 983. F.2d at 162-163. The Cassidy court then considered the question of whether the early IRA withdrawal assessment was a tax or penalty.

At the time Cassidy was decided, the prevailing test for determining if an assessment was a tax or penalty was set forth in Feiring, as refined in In re Lorber Industries of California, Inc., 675 F.2d 1062 (9th Cir. 1982), incorporating the following criteria:

3

> (1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property;
> (2) imposed by, or under authority of the legislature;
> (3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; [and]
> (4) under the police or taxing power of the state.

Cassidy, 983 F.2d at 163. The Cassidy court noted that three of the four criteria were undisputedly satisfied, and it focused its inquiry on the third prong. In doing so, it looked to the legislative history of § 72(t), which indicated that "the basic purposes of the Section 72(t) exaction [were] to prevent retirement plans from being treated as savings accounts, to recapture a measure of tax benefits that have been provided prior to the withdrawal, and to deter the use of retirement funds for nonretirement purposes." Cassidy, 983 F.2d at 164. The court found there to be equally strong arguments that the purpose of the assessment is to recapture a measure of the tax benefits and that the purpose is to deter withdrawals via sanctions. Concluding that the Feiring test did not resolve the issue, the court turned to bankruptcy policy.

"Section 507(a)(7)[2] of the Bankruptcy Code, granting priority to taxes, implements a broader congressional policy against punishing innocent creditors of a bankrupt." Cassidy, 983 F.2d at 164 (citing Matter of Unified Control Sys., Inc., 586 F.2d 1036, 1038 (5th Cir. 1978)).

> "[T]he prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors." Simonson v. Granquist, 369 U.S. 38, 40-41, 82 S. Ct. 537, 538-39 (1962).

---

[2] Section 507(a) has been renumbered since the Cassidy decision; the section that now appears as § 507(a)(8) was once § 507(a)(7), and the claims decribed therein now are entitled to eighth priority instead of seventh, but it is otherwise unchanged.

4

> The policy of protecting unsecured creditors from the bad conduct of the debtor is best implemented by avoiding burdening the claims of unsecured creditors with penalties that are imposed on the debtor.

Cassidy, 983 F.2d at 164. The court agreed that if the purpose of the assessment is to deter a taxpayer from withdrawing amounts from a retirement account, then that effect would be diminished or lost by having the creditors, rather than the taxpayer, pay for the early withdrawal.[3] Accordingly, the court concluded that the exaction under § 72(t) was a "penalty" for purposes of determining priority in bankruptcy. 983 F.2d at 164.

The Cassidy court then looked to whether the penalty was compensation for actual pecuniary loss, and would for that reason be entitled to priority under § 507(a)(7)(G) (now § 507(a)(8)(G)). The court found that it was not, because the assessment was made "whenever an early withdrawal is made from a qualified pension plan, regardless of when the plan was established" and the "penalty is a flat rate penalty bearing no relationship to the direct financial loss of the government," indicating "an intent to punish, not to defray costs." Cassidy, 983 F.2d at 165.

The Tenth Circuit Court of Appeals was asked to reconsider and overturn Cassidy in United States v. Reorganized CF&I Fabricators of Utah, Inc. (In re CF&I Fabricators of Utah, Inc.), 53 F.3d 1155 (10th Cir. 1995). In CF&I, the chapter 11 debtor failed to make required pension plan contributions and was assessed 10% of the funding deficiency. The IRS asserted that the liability was entitled to priority as an excise tax under § 507(a)(7) (now § 507(a)(8)), but the bankruptcy court found that the liability was a penalty that did not compensate for pecuniary loss and was not entitled to priority treatment. The IRS asked the court of appeals to reconsider Cassidy and find that

---

[3]The fact that general unsecured creditors will not receive a payment under the plan proposed by Ms. Cespedes does diminish the broad policy consideration on which the Cassidy decision is based.

5

because the assessment in question is labeled an "excise tax" under the Internal Revenue Code, it must be considered an excise tax under the Bankruptcy Code as well. CF&I, 53 F.3d at 1157. The court declined to overrule Cassidy, and instead affirmed the bankruptcy court's reliance on Cassidy in holding that the assessment in question was a penalty, and not an excise tax.

The Supreme Court granted certiorari in the CF&I case to resolve a split in the circuits over whether the assessments for failing to make the required pension plan contributions were excise taxes within the meaning of § 507(a)(7)(E) (now § 507(a)(8)(E)). United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 218, 116 S. Ct. 2106, 2110 (1996). The Court rejected the notion that it was bound by the label given to the assessment in the Internal Revenue Code, observing that in numerous cases "the Court looked behind the label placed on the exaction and rested its answer directly on the operation of the provision using the term in question." CF&I, 518 U.S. at 220, 116 S. Ct. at 2111. Turning to the specific question of whether the assessment was a tax or penalty, the Court noted that in one context, the Court distilled the question as follows: "[a] tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act." CF&I, 518 U.S. at 224, 116 S. Ct. at 2113 (quoting United States v. La Franca, 282 U.S. 568, 572, 51 S. Ct. 278, 280 (1931)). The Court went on to find that the law required corporations to make certain contributions to pension plans, and that the 10% assessment was clearly a penalty for an unlawful omission.

The IRS concedes that the court may look beyond the labels in the Internal Revenue Code, but argues that the test identified by the Supreme Court in CF&I is determinative. The Supreme Court stated that a penalty is "punishment for an unlawful act." CF&I, 518 U.S. at 224, 116 S. Ct.

at 2113. Because the early withdrawal from Ms. Cespedes' retirement accounts was not unlawful, the IRS maintains, the 10% assessment could not be a penalty.

The court disagrees with the IRS's narrow reading of CF&I and its application to this case. In CF&I, the Supreme Court stated that it took "La Franca's statement of the distinction to be *sufficient for the decision of this case*." CF&I, 518 U.S. at 224, 116 S. Ct. at 2113 (emphasis added). Because the exaction in question in CF&I was related to an unlawful omission, it was not necessary for the Court to consider whether a penalty could also apply to an act or omission that was lawful, but discouraged. Further, the Court was aware of the Tenth Circuit's decision in Cassidy,[4] but it chose not to criticize the court's conclusion in that case or to draw any distinctions.

In addition, after the decision in CF&I, the issue before this court came before the bankruptcy court for the Southern District of California, which came to the same conclusion as Cassidy. In Mounier v. United States (In re Mounier), 232 B.R. 186 (Bankr. S.D. Calif. 1998), the debtors received a chapter 7 discharge and sought a determination that the United States' post-discharge collection efforts violated the discharge injunction. The court relied upon CF&I and Cassidy in deciding whether the early withdrawal assessment was a tax or penalty, and looked at cases that considered factors other than the four-prong test laid out in Cassidy. Mounier, 232 B.R. at 191-92 (citing In re Suburban Motor Freight, Inc., 36 F.3d 484, 487-89 (6th Cir. 1994) (adding two elements to the Lorber test: whether the exaction is universally applicable to similar situated entities, and whether granting priority status would disadvantage private creditors with like claims); Bell v. Brown (In re Payne), 27 B.R. 809 (Bankr. D. Kan. 1983) (applying a totality test of whether

---

[4] Cassidy is referenced in footnote 3 of the Supreme Court decision, and is discussed at length in the Tenth Circuit's CF&I decision directly before the Court.

7

nontax characteristics of an obligation outweigh the tax characteristics); In re Freymiller Trucking, Inc., 194 B.R. 914, 915 (Bankr. W.D. Okla. 1996) (tax must be assessed at a fixed rate set by statute)).

After examining at all the various tests, the Mounier court stated that

> in this case, consideration of the additional factors does not change the character of the § 72(t) exaction. While the § 72(t) exaction is applied uniformly to similarly situated entities, the exaction does disadvantage private creditors by reducing their distribution of estate assets. In the case of an early withdrawal from a qualified retirement account, the taxpayer is including such amount in gross income, and thus paying an income tax on the withdrawal. The tax resulting from the inclusion of the withdrawn amount in income is clearly a tax. However, the additional obligation imposed by § 72(t) is, as the Cassidy court explained, meant to "prevent retirement plans from being treated as savings accounts, to recapture a measure of tax benefits that have been provided prior to the withdrawal, and to deter the use of retirement funds for nonretirement purposes." Such amount is not intended to provide for the support of the government. The exaction imposed by § 72(t) simply does not have the characteristics of a traditional tax. In addition, viewing such an exaction as a non-tax renders a result that furthers the underlying purpose of the Bankruptcy Code.

Mounier, 232 B.R. at 192-193 (quoting Cassidy, 983 F.2d at 164). The court also agreed with Cassidy that the penalty is not compensation for actual pecuniary loss entitled to priority, and then found that the § 72(t) penalty was nondischargeable in a chapter 7 case pursuant to § 523(a)(7). Of course, the claim is dischargeable in this chapter 13 case, because debts that are nondischargeable under § 523(a)(7) are not excepted from discharge in § 1328(a)(2).

This court agrees with the reasoning in Cassidy and Mounier, and concludes that the 10% early IRA withdrawal assessment is a penalty that is not compensation for actual pecuniary loss, and the claim related to that assessment shall be treated as a general unsecured debt, and not a priority claim. Consequently, the court must consider how the payments and credits applied to the debtor's 2006 income tax obligation should be allocated.

Three credits were made to the debtor's 2006 tax liability: $1,154 for taxes withheld from the debtor's wages, a $51.23 credit for telephone taxes, and a $2,699.06 refund from Ms. Cespedes' 2005 tax return. The IRS contends that it is entitled to apply payments to any liability it chooses. Ms. Cespedes, however, maintains that the $1,154 that was withheld from her wages should be applied to the 2006 income taxes attributable to her wages. The court agrees with the debtor that the withheld taxes of $1,154 relate directly to her wages and should be allocated to the priority claim because the tax obligation arising from wages is clearly a priority claim. The $51.23 tax credit and the $2,699.06 tax credit will be allocated pro rata between the priority claim and the general unsecured claim. Accordingly, the debtor's objection is **ALLOWED**, and the IRS shall have a priority claim of $1,911.33 and a general unsecured claim of $4,687.70.

**SO ORDERED**.

**END OF DOCUMENT**